**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**J&J SPORTS PRODUCTIONS, INC.,**
as Broadcast Licensee of the **October 1, 2005**
**TARVER/JONES II** Program,

                                 **Plaintiff,**

           **-against-**

**JUSTO REALES** and **CECILIO WATERMAN,**
individually and doing business as **K'S BARBER**
**SHOP a/k/a K BARBER SHOP,** and **K'S BARBER**
**SHOP a/k/a K BARBER SHOP**

                             **Defendants.**
-------------------------------------------------------------------X
**GOLD, S., U.S.M.J.:**

            **REPORT AND**
            **RECOMMENDATION**

            **06-CV-00479 (FB) (SMG)**

## Introduction

Plaintiff, J & J Sports Productions, Inc., brings this action against defendants, Justo

Reales and Cecilio Waterman, individuals, and a business, K's Barber Shop.  Plaintiff alleges

that the defendants unlawfully intercepted, de-scrambled, and exhibited a television program that

it had the exclusive right to distribute, in violation of the Federal Communications Act, 47

U.S.C. §§ 553 and 605.  More specifically, plaintiff alleges that defendants intercepted and

showed the Tarver v. Jones boxing match ("the event") on October 1, 2005 at K's Barber Shop

without paying the plaintiff the required fees.

Upon plaintiff's application and in light of the defendants' failure to appear or otherwise

defend this action, the Clerk of the Court noted the defendants' default.  *See* Docket Entry 9.

Senior United States District Judge Frederic Block then granted plaintiff's motion for a default

judgment and referred the question of what relief should be awarded to me for report and

recommendation.  *See* Docket Entry 10.

Plaintiff has submitted an affidavit from its president, Joseph Gagliardi ("Pl.'s Aff."), an affidavit of costs and fees, and a memorandum of law in support of its motion for default judgment ("Pl.'s Mem."). *See* Docket Entry 8. Defendants have not responded. Based on plaintiff's submissions, I determine damages as follows below.

**Facts**

By contract, plaintiff held the right to distribute the event and all accompanying undercard matches "via closed circuit television and via encrypted satellite signal." Comp., ¶ 16. Plaintiff entered into agreements with various establishments in the State of New York, allowing them to exhibit the event to their patrons if they paid plaintiff a fee. Compl. ¶ 17; Pl.'s Aff., ¶ 3, Ex. B. Defendants did not contract with the plaintiff or pay it any fees to exhibit the event. Compl. ¶¶ 19-20.

Plaintiff hired an auditing company, Signal Auditing, Inc., to investigate whether establishments were illegally exhibiting the program. Pl.'s Aff., ¶ 4. On the night of the event, an investigator entered K's Barber Shop shortly after 11:00 p.m. and remained there for about two minutes. Pl.'s Aff., Ex. C. According to a form "Piracy Affidavit" he completed about two weeks later, the investigator observed patrons watching the event on a single 25-inch television set. *Id.* The investigator observed an "HBO" Pay Per View Logo on the screen. *Id.* The investigator took three head counts of the number of patrons and counted 13, 16, and 16 respectively, and estimated that the capacity of the establishment was approximately 20 people. *Id.* The investigator did not pay a cover charge to enter the barber shop, did not order a drink, and apparently did not see beverages being sold or served. *Id.*

**Discussion**

A. *Liability*

Judge Block has already determined that plaintiff is entitled to relief pursuant to 47

U.S.C. § 553 and § 605(a). Mem. & Order at 3-4, Docket Entry 10. Judge Block further found

that plaintiff's complaint did not state a claim under 47 U.S.C. § 605(e)(4). *Id.* at 4. Finally, in

accordance with Second Circuit case law, Judge Block concluded that any damages should be

awarded only for defendants' violation of Section 605(a). *Id.* Those damages are determined

below.

B. *Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon

entry of a default judgment, allegations relating to damages are not. *See Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Rather, claims for

damages must be established with evidence, and the defendant must be afforded the opportunity

to contest the amount claimed. *See id.* In this way, a court may ensure that there is a basis for

the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok*

*v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this

determination based upon evidence presented at a hearing or upon a review of detailed affidavits

and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*,

951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiff in this case seeks statutory

damages, injunctive relief, and attorneys' fees and costs. *See* Compl. at 7-8; Pl.'s Mem. at 9-10.

Defendants have not submitted any opposition. Accordingly, a hearing is not warranted, and

damages may be determined based on the plaintiff's submissions. *J&J Sports Prods. v. Vasquez*,

2006 WL 2583740, *3 (E.D.N.Y. Sept. 7, 2006).

A claimant who has established liability under Section 605(a) may elect between actual damages plus defendant's profits, if any, and statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). If a party elects to recover statutory damages, it may be awarded anywhere from $1,000 to $10,000 for each violation of Section 605(a). 47 U.S.C. § 605(e)(3)(C)(i). An additional award of up to $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. 47 U.S.C. § 605(e)(3)(C)(ii); *see also Am. Cablevision v. McGinn*, 817 F. Supp. 317, 320 (E.D.N.Y. 1993), *citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp.*, No. 88 Civ. 2834, 1991 WL 58350, *1 (E.D.N.Y. Mar. 20, 1991).

The amount of damages to be awarded pursuant to Section 605 "rests within the sound discretion of the court." *Time Warner Cable of New York City v. Taco Rapido Rest.,* 988 F. Supp. 107, 111 (E.D.N.Y. 1997); 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court considers just"). An award of damages pursuant to Section 605 should be based in part on the commercial gain derived from illegal broadcasts. One method courts use to determine commercial gain is to assess a per customer charge based on the number of patrons in the establishment at the time of the broadcast. *See, e.g., Top Rank, Inc. v. Tacos Mexicanos*, 2003 WL 21143072, *4 (E.D.N.Y. Mar. 28, 2003) (assessing damages on a per patron basis at $50 per patron); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same); *Cablevision Sys. Corp. v. 45 Midland Enter.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same). Courts following this method have typically multiplied the number of patrons by either $50.00 or $54.95, the price an individual would pay to view the boxing match at home on a pay-per-view channel. *Vasquez*, 2006 WL 2583740, *4.

Plaintiff here has submitted evidence that its auditor observed between 13 and 16 patrons on the premises. Pl.'s Aff., Ex. C. Assuming that the investigator's two head counts of 16 patrons are the most accurate, an award of $50 per patron would result in a total award of $800.00. This amount, however, is below the statutory minimum of $1000 under Section 605(e)(3)(C)(i). In circumstances such as these, courts have sometimes awarded a flat amount or an increased per-patron award. *Entm't by J&J, Inc. v. Diaz*, 2006 WL 2934807, *4 (E.D.N.Y. Sept. 5, 2006) (awarding $100 per patron); *J&J Sports Prods., Inc. v. Lopez*, 2006 WL 2355851, *3 (E.D.N.Y. June 8, 2006) (awarding, where there were no patrons present, a flat amount of $2,500 based on the pecuniary loss to the plaintiff and the estimated "financial resources, needs, and earning ability of the defendant"). I recommend that the $50 per-patron calculation be used, but that the award be increased to $1000 to accommodate the statutory minimum. *See Kingvision v. Pay-Per-View, Ltd. v. Cazares*, 2006 WL 2086031, *4 (E.D.N.Y. July 25, 2006).

Plaintiff also seeks an enhanced damages award of up to $100,000 pursuant to Section 605(e)(3)(C)(ii), asserting that defendants' acts were willful and committed "for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference for its requirements." *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127; 105 S. Ct. 613, 624 (1985), *quoted in Cablevision v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. *See Taco Rapido Rest.*, 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to engage in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled

transmission."); *Time Warner Cable of New York v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). *See also* Pl.'s Mem. at 7.

Plaintiff's showing that defendants' acts were committed for commercial advantage is not particularly strong. Plaintiff's boilerplate allegations that the broadcast of the event "most likely led to an increased number of patrons and, thus, an increase in profits," Pl.'s Mem. at 2-3, is not substantiated by any specific evidence. To the contrary, the investigator's report suggests that the defendants were not financially motivated. First, there is no indication that the defendants were doing business at the time of the event, which was observed at 11:00 at night. Pl.'s Aff., Ex. C. Moreover, the report contains no indication that the defendants received any monetary benefit for showing the bout that night. The investigator paid no cover charge to enter the shop, ordered no drink, and did not even observe food or drinks being served. *Id.* There is also no indication that defendants promoted their display of the boxing match. In sum, plaintiff has failed to establish that the defendants profited at all or derived any revenue, either directly or indirectly, by showing the event.

Nonetheless, the legislative history of Section 605 states that Congress "intended that the term 'direct or indirect commercial advantage or private financial gain' be interpreted broadly." 130 Cong. Rec.§ 14286 (daily ed. Oct. 11, 1986) (statement of Sen. Packwood), *reprinted in* 1984 U.S.C.C.A.N. 4742, 4750, 1984 WL 37497. I therefore conclude that, because the event was shown in a commercial premises to a fairly large group of people, a modest award of enhanced damages would be proper.

Courts apply a variety of factors when assessing enhanced damages. Factors that support

a significant enhanced damages award include (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks. *Kingvision v. El Rey Del Bistec y Caridad, Inc.*, 2001 WL 1586667, *2 (S.D.N.Y. Dec. 12, 2001).

These factors do not weigh in favor of a substantially enhanced award in this case. With regard to the first factor, plaintiff presents additional investigator affidavits, annexed to its affidavit for costs and fees, indicating that the defendants illegally exhibited two other matches distributed by different corporations on June 25, 2005 and February 25, 2006. Attorney's Aff. Costs & Fees, Exs. B, C. This is some evidence that defendants committed other violations and thus supports an enhanced damages award to some extent. However, no cover charge or beverage service took place, and the number of patrons – seven on the first occasion and only one on the second – was small. Moreover, at least the June 25, 2005 violation will not go unpunished, because another plaintiff has filed a separate action based on this other act of piracy. *See Joe Hand Prods. v. Waterman, et al.*, 06-CV-4028 (DLI)(JMA) (E.D.N.Y. 2006).

In addition, the other factors that might support an enhanced damages award are not present in any way. Plaintiff has offered no proof of any substantial actual damages. With regard to the remaining three factors, as stated above, there is no evidence that defendants gained financially at all, promoted the fight in any way, or served food or drinks during the fight.

Taking all of these factors into account, including the evidence of two prior violations, I recommend that plaintiff be awarded an enhancement of four times the basic statutory damages award, or $4,000, for a total award of $5,000 in statutory damages. *See J&J Sports Prods., Inc.*

*v. Drake*, 2006 WL 2927163, *5 (E.D.N.Y. Oct. 11, 2006) (awarding a factor of three times for willfulness against a barber shop); *Kingvision Pay-Per-View, Ltd. v. Hansen*, 2004 WL 744230, *4 (S.D.N.Y. Apr. 5, 2004) (awarding a factor of five times for willfulness against a barber shop); *Top Rank, Inc. v. Ortiz*, 2003 WL 1960211, at *3 (S.D.N.Y. Mar. 27, 2003) (awarding double damages for willfulness); *but see J & J Sports Prods., Inc. v. Vasquez*, 2006 WL 2583740, *5 (E.D.N.Y. Sept. 7, 2006) (declining to award any statutory enhancement where the broadcast occurred in a barber shop with only four individuals present and there was no evidence of any financial gain). This amount is sufficient to redress the harm caused by defendants' activities, as well as to deter future violations, particularly where, as here, there is no indication that defendants received any financial gain as a result of the illegal broadcast.

C. *Attorneys' Fees and Costs*

Plaintiff also seeks to recover its attorneys' fees and costs, which it has documented in an affidavit prepared by its counsel. An award of attorneys' fees is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In this Circuit, all claims for attorneys' fees must be supported by contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Plaintiff requests a total of $1,925.00 in fees and costs, comprised of $1,025.00 in attorneys' fees, filing fees of $250, service of process fees of $300, and investigative fees in the amount of $350. Attorney's Aff. Costs & Fees at 1-4.

The attorneys' fees are based upon four hours for attorneys at $200 per hour and three hours for paralegals at $75 per hour. *Id.* These fees appear to be reasonable and are supported by contemporaneous time records. The fees and costs for filing and service are also reasonable. *See*

*id.*

Courts are divided over whether the costs of an investigator are recoverable pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). *Compare Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 66-68 (E.D.N.Y. 2006) *with Kingvision Pay-Per-View, Ltd., v. Cazares*, 2006 WL 2086031, *6 (E.D.N.Y. July 25, 2006), and *Drake,* 2006 WL 2927163, at * 7. While I find the analysis in *Autar* to be persuasive, I need not decide the issue for purposes of this case because plaintiff's showing in support of its application for investigative costs is inadequate. "In order to recover investigative costs a plaintiff must make a showing similar to that required to recover attorneys' fees." *Autar*, 426 F. Supp. 2d at 67. Here, plaintiff seeks to recover $350 it claims to have paid to its investigator, but the investigator states in his affidavit that he spent only approximately two minutes at the barber shop. Pl.'s Aff., Ex. C. Plaintiff offers no rationale for an award of $350 for two minutes of investigative work. I therefore recommend that this aspect of plaintiff's claim for fees and costs be rejected.

For these reasons, I respectfully recommend that the plaintiff be awarded $1,025.00 in attorneys' fees and $550 in costs.

D. *Permanent Injunction*

Under Section 605(e)(3)(B)(i), a court may grant temporary and final injunctions as necessary to prevent further violations of either section. "A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *Lopez*, 2006 WL 2355851, at *5, *citing Main Events/Monitor Prods. v. Batista*, 1998 WL 760330, *1 (E.D.N.Y. Aug. 26, 1998). Plaintiff here contends that injunctive relief is

necessary because defendants will continue to violate the statute, and plaintiff cannot determine in monetary terms the amount of lost revenue and damage to its reputation and its ability to "attract and finance the future acquisitions of quality services." Compl. ¶ 38.

Although plaintiff may meet the first prong of the test for an injunction, it has not satisfied the second one. Even where equitable relief is available by statute, traditional prerequisites apply, and a party seeking an injunction must demonstrate irreparable harm and the absence of any adequate remedy at law. *Rondeau v. Mosinee*, 422 U.S. 49, 60-61, 95 S. Ct. 2069, 2077 (1975), *citing Hecht Co. v. Bowles*, 321 U.S. 321, 329-30, 64 S. Ct. 587, 591-92 (1944). *See also Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 193, 98 S. Ct. 2279, 2301 (1978) (holding that equitable remedies are discretionary, and federal judges are not "mechanically obligated to grant an injunction for every violation of law."). Plaintiff demonstrates only a monetary loss, and there is no evidence in plaintiff's papers that the damages award recommended above will be insufficient to deter future violations of the statute. I note in this regard that the two prior unauthorized exhibitions described above took place before either this action or *Joe Hand Prods. v. Waterman, et al.*, 06-CV-4028, was filed. Under these circumstances, defendants' prior violations do not suggest that the judgments that will be entered in this and the *Joe Hand* case will be inadequate to deter future violations. Thus, I recommend that plaintiff's request for a permanent injunction be denied.

## Conclusion

For the foregoing reasons, I respectfully recommend that a default judgment be entered against the defendants, jointly and severally, in the total amount of $6,575, composed of $5,000 in statutory damages and $1,575 in attorneys' fees and costs. I further recommend that plaintiff's

request for injunctive relief be denied.

Any objections to this report and recommendation must be filed with the Clerk of the Court, with copies provided to the Honorable Frederic Block within ten days of receipt and in any event no later than April 27, 2007.  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. §636(b) (1); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Secretary of Health and Human Services*, 892 F.2d 14, 15 (2d Cir. 1989).  Plaintiff is directed to serve a copy of this report and recommendation upon defendants promptly and to provide proof of service to the Court.


_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge


Brooklyn, New York
April 9, 2007


*U:\JB 2006-2007\reales 040907.wpd*